IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


STANLEY M. THORNHILL,                           Civ. No. 06-1783-AA

       Petitioner,                          OPINION AND ORDER

    v.

SHARON BLACKETTER,
Superintendent, Eastern Oregon
Correctional Institution,

      Respondent.
_____

Adam S. Arms
McKanna Bishop Joffe & Sullivan LLP
1635 N.W. Johnson St.
Portland, OR 97209
    Attorney for Petitioner

Hardy Myers
Attorney General
Jacqueline Sadker
Lynn David Larsen
Assistant Attorneys General
Department of Justice
1162 Court Street NE
Salem, OR 97310
    Attorneys for Respondent

1 - OPINION AND ORDER

AIKEN, Judge:

Petitioner Stanley Thornhill, an inmate at the Eastern Oregon Correctional Institution, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleges that his conviction was obtained in violation of his Sixth Amendment rights to confront witnesses and present a defense, because the trial court denied admission of certain evidence at trial. Additionally, petitioner contends that he received ineffective assistance of counsel when his trial counsel failed to call a certain witness to testify. Respondent maintains that petitioner's Sixth Amendment rights were not violated, and that the court should defer to the state court decisions against petitioner. I agree with respondent and deny the petition.

## I. BACKGROUND

In 1996, petitioner was charged with raping and sexually abusing J.G., the six-year-old daughter of his live-in girlfriend. In November 1995, J.G. disclosed the abuse to her father, who then transported J.G. to a police station where she made similar statements to two police officers. J.G. was taken to the hospital where she was examined by a nurse and a physician. J.G. repeated her statements that petitioner had touched her inappropriately. In January 1996, J.G. was unexpectedly interviewed by police officers at her school and made statements consistent with her initial allegations. Subsequently, J.G. was examined by a physician who

determined that rape, sodomy, and oral sex by petitioner had occurred.

Petitioner was arrested and charged with Rape in the First Degree, Sodomy in the First Degree, and two counts of Sexual Abuse in the First Degree. From the beginning, petitioner and J.G.'s mother denied the abuse and accused J.G.'s father of persuading J.G. to fabricate the allegations against petitioner in an attempt to gain custody of J.G.

Prior to trial, petitioner sought to admit evidence that J.G. and her older brother made statements to a detective indicating that the brother, then seven years old, had fondled J.G. Petitioner also sought to admit evidence that J.G. and her brother had been physically abused by their father and had witnessed him physically and sexually abuse their mother. Finally, petitioner sought to introduce the testimony of a psychologist, Dr. Stephen Scherr, that children who have been abused or have witnessed domestic violence or abuse may "project" that abuse to a person they consider "safe." The State objected to this evidence and moved for its exclusion.

The trial court, through the rulings of two judges, granted the State's motions in limine and excluded the evidence. Specifically, the trial court found that evidence of abuse by J.G.'s brother, "if relevant at all" was inadmissible under Or. Evid. C. 412, because the evidence "reflects merely a generalized

bias" rather than a particularized bias on the part of J.G.  Resp. Ex. 121, p. 2.

Further, after a pretrial hearing at which J.G.'s mother and Dr. Scherr testified, the trial court found that Dr. Scherr's testimony would not assist the jury, because Dr. Scherr admitted that he lacked sufficient information to render an opinion as to the whether factors relevant to J.G.'s situation would impact the accuracy of her allegations.  The trial court concluded that if J.G.'s mother and Dr. Scherr were allowed to testify, "jurors lacking any psychological training would be asked to form an opinion based upon information Dr. Scherr believes is incomplete." Resp. Ex. 123, p. 2.  Thus, the trial court ruled that the proffered testimony "would only confuse the jury and invite them to engage in pure speculation."  Id.

At trial, the State presented the testimony of J.G., then eight years old, along with the testimony of law enforcement officers and medical professionals.  In his defense, petitioner portrayed J.G.'s allegations as fabrications concocted by J.G.'s father in an attempt to gain custody of J.G.  Petitioner presented the testimony of alibi witnesses, J.G.'s mother and grandmother, and several family friends who testified as to petitioner's close relationship with J.G. and her brother.  The jury unanimously convicted petitioner on all counts.  Petitioner was sentenced to a term of imprisonment totaling 221 months.

Petitioner appealed the judgment of conviction on grounds that: 1) the trial court erred in excluding evidence that J.G.'s brother had abused her; 2) the trial court erred in excluding evidence that J.G. and her brother were physically abused by their father and witnessed the physical and sexual abuse of their mother; 3) the trial court erred when it excluded Dr. Scherr's testimony regarding a child's motivation to make false allegations in certain circumstances; 4) the trial court erred in overruling a defense objection to the prosecutor's cross-examination of a defense witness; 5) the trial court erred in excluding non-registered voters and felons from the jury; and 6) the trial court erred in imposing Measure 11 sentences. Resp. Ex. 103. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. State v. Thornhill, 165 Or. App. 486 (2000), rev. denied, 332 Or. 632 (2001).

Petitioner filed a petition for post-conviction relief, asserting nineteen claims of ineffective assistance of counsel, including the claim that his trial counsel was ineffective for failing to call the attorney of J.G.'s father as a witness. Resp. Ex. 109, p. 5. After conducting a hearing on the petition at which petitioner testified, the PCR court denied relief on all claims. Resp. Ex. 126. The Oregon Court of Appeal affirmed without opinion, and the Oregon Supreme Court denied review. Resp. Exs. 131, 133.

5 - OPINION AND ORDER

II. LEGAL FRAMEWORK

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEPDA), a federal court may not grant a habeas petition regarding any claim "adjudicated on the merits" in a state court, unless the state court ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under § 2254(d)(1), a state court decision is "contrary to" federal law only if it fails to apply the correct Supreme Court authority, or applies the correct controlling authority to a case involving "materially indistinguishable" facts but reaches a different result. Williams v. Taylor, 529 U.S. 362, 405-07, 413 (2000). Similarly, a state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"In Williams and in subsequent decisions the Supreme Court has repeatedly emphasized that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003) (quoting Williams, 529 U.S. at 410). Thus, "[e]ven if the federal habeas

court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." <u>Penry v. Johnson</u>, 532 U.S. 782, 793 (2001); <u>see also Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (rejecting Ninth Circuit's "clear error" standard for determining whether application of federal law by a state court is unreasonable under the AEDPA).

The Sixth Amendment affords criminal defendants the following rights: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." The Supreme Court has held that "[w]ether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (citations omitted). This includes a the right "to confront and cross-examine witnesses," the right "to present witnesses in [one's] defense," <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294, 302 (1973), and "some opportunity to show bias on the part of a prosecution witness." <u>United States v. Abel</u>, 469 U.S. 45, 50 (1984) (citing <u>Davis v. Alaska</u>, 415 U.S. 308 (1974)).

The Sixth Amendment also guarantees criminal defendants the right to effective assistance of counsel. The Supreme Court's ruling in Strickland v. Washington, 466 U.S. 668 (1984) sets forth the "clearly established federal law" governing claims alleging ineffective of counsel. Williams, 529 U.S. at 390. Under Strickland,

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Id. (quoting Strickland, 466 U.S. at 687).

It is petitioner's burden to show that the state courts applied clearly established law to the facts of his case in an objectively unreasonable manner. 28 U.S.C. § 2254(d); see Woodford v. Visciotti, 537 U.S. 19, 25 (2002). Likewise, with respect to factual issues, petitioner bears the "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Finally, if petitioner establishes the "precondition" that the state court's decision was objectively unreasonable, petitioner must also show that the decision "had substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 127 S. Ct. 2321, 2325 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).

III. DISCUSSION

A.  Fair Opportunity to Present a Defense

Petitioner argues that his rights to confront witnesses and present a defense were violated when the trial court:  1) excluded evidence that the J.G.'s brother had sexually abused her; 2) excluded evidence that J.G. and her brother were physically abused by their father and had witnessed the sexual and physical abuse of her mother; and 3) excluded the expert testimony evidence of a psychologist, Dr. Stephen Scherr.

1.  Evidence of Brother's Abuse

Petitioner sought to admit evidence that J.G. and her older brother, then seven, stated to a detective that the brother had fondled J.G. and rubbed his penis against her vagina and buttocks. Petitioner initially sought to introduce this evidence to show bias on the part of J.G.  The State objected on grounds that petitioner failed to provide the requisite notice prior to seeking admission of J.G.'s prior sexual history and that the evidence did not establish bias against petitioner.   The trial court denied admission of this evidence under Or. Evid. C. 412, finding that petitioner failed to establish that the evidence revealed a particularized bias on the part of J.G. that would lead her to fabricate the allegations.  Resp. Ex. 121-22.

Petitioner argues that the trial court failed to apply controlling federal law by not weighing the interests served by Or.

Evid. C. 412 against his right to confront witnesses with evidence of bias.  Petitioner is incorrect.  As evidenced by the court's rulings, it considered petitioner's arguments but found that the evidence was not probative of bias.  Resp. Exs. 121-22.  Therefore, the issue is whether the trial court's decision was an unreasonable application of clearly established federal law.

In habeas cases, the Ninth Circuit employs a five-part balancing test to determine whether a state court's decision to exclude evidence violated a petitioner's constitutional rights. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004).

> These factors include: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.

Id.; see also Olden v. Kentucky, 488 U.S. 227, 233 (1988).  Based on these factors, I do not find that the trial court's ruling was objectively unreasonable.

The issue at trial was whether petitioner raped and sodomized J.G.  At the pretrial hearing, defense counsel argued that evidence that J.G. was fondled by her brother was relevant and probative of bias, because J.G. was "groomed" and controlled by her father. Pretrial Hearing on Nov. 1, 1996, p. 26.  Indeed, petitioner's defense theory was that J.G.'s father coerced or persuaded J.G. to accuse petitioner of abuse.  As noted by respondent, petitioner fails to explain how evidence that J.G.'s seven-year-old brother

fondled her at some unspecified time shows bias or a motivation to fabricate the allegations of rape and sodomy against petitioner. Without a clear basis or purpose for introducing this evidence, this evidence was not probative, reliable, or capable of evaluation by the jury.

To the extent that petitioner sought to introduce this evidence as an alternate source of J.G.'s sexual knowledge, J.G. testified that petitioner rubbed her "private part" with his hand, that petitioner touched and penetrated her "bottom" with his "private place," that she saw something "white" come out of petitioner's "private place," and that petitioner's "private place" "gets soft and sometimes it gets hard." Trial transcript, pp. 164-72. J.G's statements regarding her brother's alleged touching do not explain her allegations against petitioner involving erection and ejaculation.

In sum, the trial court's exclusion of this evidence was not an unreasonable application of clearly established federal law and did not violate petitioner's Sixth Amendment rights to confront witnesses and present a defense.

Regardless, even if constitutional error occurred, petitioner fails to establish that exclusion of the brother's fondling of J.G. had a "substantial and injurious" effect on the verdict. As explained above, this evidence did not mirror J.G.'s allegations of abuse by petitioner or support petitioner's theory that J.G.

11 - OPINION AND ORDER

fabricated the allegations against petitioner to please her father. In fact, there was no evidence that J.G.'s father knew of the brother's conduct. Had this evidence been admitted, the jury would have been presented with evidence that a boy at the tender age of seven - who also lived with J.G., their mother, and petitioner - was acting in a highly sexualized manner.

Petitioner's reliance on the Ninth Circuit's ruling in LaJoie v. Thompson, 217 F.3d 663 (9th Cir. 2000) is misplaced. There, the defendant was charged with raping and sodomizing his girlfriend's niece. Id. at 665. He sought to admit evidence that the victim had been raped previously by another man to support his theory that the victim's injuries could have been caused by someone else and that she could have obtained her sexual knowledge from another source. Id. at 665-66. The trial court precluded such evidence on grounds that the defendant failed to provide the State with adequate notice under the relevant "rape shield law," Or. Evid. C. 412, and the defendant subsequently was convicted of rape and sodomy. Id. at 666.

The Ninth Circuit found the exclusion of evidence under the notice provision was an unreasonable application of clearly established law and had a "substantial and injurious" effect on the verdict where the evidence arguably supported the defendant's theory that the victim's injuries and sexual knowledge could be attributed to another person, the victim had told a doctor that the

12 - OPINION AND ORDER

defendant had never penetrated her, and two teachers testified that the victim was not credible.  Id. at 672-73.

Unlike LaJoie, the trial court did not rely on the notice provision of Or. Evid. C. 412 in excluding evidence regarding J.G.'s brother.  Further, this case does not involve uncontested evidence that J.G. was previously raped and sodomized by her brother.  No witness at trial questioned J.G.'s credibility, and petitioner had no evidence that J.G. was prone to lying.  To the contrary, the evidence presented at trial bolstered J.G.'s credibility, particularly the testimony of a police officer that J.G. made completely consistent statements of abuse by petitioner during an unannounced and unexpected visit to her school.

In sum, I find that the trial court's exclusion of this evidence was not objectively unreasonable and had no substantial and injurious effect on the verdict.

2.    Evidence of Domestic Violence and Sexual Abuse and Testimony of Expert Psychologist

Petitioner also sought to admit the testimony of J.G.'s mother and the alleged abuse by J.G.'s brother to support the expert testimony of Dr. Scherr, a psychologist.  J.G.'s mother intended to testify that J.G.'s father had physically abused the children and had physically and sexually abused her in their presence.  Dr. Scherr would then testify that a child may be motivated to fabricate allegations of abuse or "project" abuse onto others when certain factors, such as domestic violence and prior sexual abuse,

13 - OPINION AND ORDER

are present.    Petitioner contends that the exclusion of this evidence and Dr. Scherr's testimony deprived him of his right to present a defense.  I disagree.

At the pretrial hearing to determine the admissibility of this evidence, Dr. Scherr testified that several factors are considered in determining a child's competency and the accuracy of a child's allegations of abuse.  Transcript of a.m. Pretrial Hearing on Nov. 7, 1996, p. 49.   These factors include the child's age and intellectual and emotional functions, the manner and circumstances in which the abuse was disclosed, events prior to the abuse, and the existence of prior abuse.  Id. at pp. 51-52.  Dr. Scherr testified other significant factors include the existence of a custody dispute or acrimonious relationship between the parents of the child and whether the child was influenced by another adult. Id. p. 52.   Dr. Scherr testified that research indicated a dramatically heightened degree of inaccuracy in abuse allegations if the child was the subject of a custody dispute or had witnessed or experienced physical or sexual abuse.   Finally, Dr. Scherr testified that another "red flag" was prior sexual abuse of the child, because sometimes children "project responsibility [for the abuse] on someone else who is a safer person to project responsibility on."  Id. p. 57.

On cross-examination, however, Dr. Scherr stated that he could not form an opinion on the accuracy of J.G.'s allegations without

14 - OPINION AND ORDER

conducting a thorough evaluation of J.G. and the circumstances surrounding her disclosure. Transcript of p.m. Pretrial Hearing on Nov. 7, 1996, pp. 20-21. Dr. Scherr admitted that he had not evaluated J.G., her mother, father or brother, or petitioner. Id. pp. 21-22. Dr. Scherr agreed that petitioner's criminal history, including a prior arrest for Rape I and providing alcohol to a minor, would be significant in evaluating J.G.'s allegations, as would the fact that petitioner and J.G.'s mother worked in a pornography shop. Id. pp. 22-23, 25-26. Dr. Scherr also agreed that a psychological evaluation of J.G.'s mother and any history of mental health issues or drug and alcohol abuse would be significant. Id. Dr. Scherr stated that he was not asked to perform such evaluations and therefore could not form an opinion regarding J.G.'s allegations. Rather, Dr. Scherr could only testify that *some* indicators of inaccurate allegations appeared to be present. Id. pp. 31-32.

The trial court, after careful consideration of the testimony and arguments, made the finding that Dr. Scherr could not render an opinion without conducting additional investigation and evaluation. Id. pp. 35-36. The court concluded:

> If Dr. Scharr [sic] were allowed . . . to testify, what the jurors would be left with, which would be a number of indicators of factors that a trained professional psychologist would use in forming an opinion about whether or not the alleged victim in this matter is either competent or whether the allegations made by the alleged victim were accurate or inaccurate.

15 - OPINION AND ORDER

If [J.G.'s mother] or others were allowed to testify as to past instances of violence, again, whether termed domestic, physical or sexual, or abuse — or past abuse, both sexual or non-sexual . . . the jurors, who are without professional training, would be asked to form an opinion on evidence that would be, according to the professional himself, Dr. Scharr [sic], very, very incomplete in forming such as opinion.

Expert witnesses are asked to testify, and allowed to testify, when their testimony would help the trier-of-fact — in this case the jury — have more understanding of the issues and the evidence before it. In this case, the expert himself has stated that he is unable to do so because of the lack of information in this case.

To allow Dr. Scharr [sic] to testify regarding the indicators, or theories, in this matter and allow other witnesses to testify regarding past incidents of violence or abuse would only . . . cause confusion among the jury and be asking them to conduct nothing more than what would be pure speculation in this matter.

Because Dr. Scharr [sic] himself was not able to form an opinion, I certainly am not going to allow the jury — under these circumstances, I'm certainly not going to allow the jurors to be put in the position of trying to form an opinion under the same circumstances.

Id. pp. 37-39. I find no unreasonable application of clearly established federal law.

"While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 547 U.S. 319, 326 (2006); see also Michigan v. Lucas, 500 U.S. 145, 150

16 - OPINION AND ORDER

(1991) (the right to present relevant evidence is not without limitation and may be outweighed by other legitimate interests).

Here, the trial court correctly found that providing the jury with incomplete, generalized, and hypothetical expert testimony would confuse the jurors rather than aid in their deliberations. As noted by the court, the testimony of J.G.'s mother if allowed, would have not assisted the jury in assessing J.G.'s allegations, because Dr. Scherr himself testified that further information was necessary to form an opinion on the accuracy of the allegations. For the same reasons, Dr. Scherr's testimony would not have been helpful to the jury and would have led to confusion and speculation.  Therefore, the testimony of J.G.'s mother and Dr. Scherr was not probative or reliable as to the central issue at trial and would not have been capable of evaluation by the jury absent the additional information deemed significant and necessary by Dr. Scherr.  <u>Chia</u>, 360 F.3d at 1004.

Contrary to petitioner's memorandum, he did not offer testimony that J.G.'s father allegedly raped her mother in J.G.'s presence as evidence that J.G.'s sexual knowledge could be attributed to another source.  Rather, petitioner offered the testimony of J.G.'s mother as background for Dr. Scherr's opinion that witnessing domestic violence and sexual abuse is a significant factor in assessing the accuracy of child abuse allegations.  <u>See</u> Pretrial Hearing on Nov. 1, 1996, pp. 4-11.  However, as explained

17 - OPINION AND ORDER

above, Dr. Scherr was unable to provide an expert opinion as to the
accuracy of J.G.'s allegations without additional information he
was not asked to obtain or evaluate.  Therefore, the testimony of
J.G.'s mother would not have been probative, reliable, or capable
of evaluation with respect to the purpose for which it was
offered.[1]

        Accordingly, I find that the trial court did not apply clearly
established federal law in an objectively unreasonable manner, and
that petitioner's conviction was not obtained in violation of his
Sixth Amendment rights to confront witnesses and present a defense.

B.  Effective Assistance of Counsel

        Petitioner argues that his trial counsel provided ineffective
assistance by failing to call the attorney for J.G.'s father as a
witness at trial.  At his PCR trial, petitioner claimed that the
attorney had obtained petitioner's criminal history two days before
J.G. disclosed petitioner's abuse.  Petitioner argued that this
attorney improperly obtained his criminal history and provided it
to J.G.'s father, thus giving rise to the false accusations by J.G.
The PCR court rejected this claim, finding that petitioner failed
to provide any documentation to support his claim and that
petitioner's testimony, as a whole, lacked credibility.  Petitioner

_____

        [1]Moreover, given the questions raised about the credibility
of J.G.'s mother, petitioner has not established that it was
reliable for and purpose.  See Transcript of Sentencing, Feb. 21,
1997, p. 53; Resp. Ex. 104 p. 16.

18 - OPINION AND ORDER

fails to establish that the ruling of the PCR court was contrary to
or involved an unreasonable application of Strickland.

The PCR court expressly followed Strickland and addressed
petitioner's ineffective assistance of counsel claim on the merits.
However, petitioner failed to demonstrate that trial counsel's
representation was deficient or that it fell below an objective
standard of reasonableness.  See Strickland, 466 U.S. at 687-88.
Petitioner could not name the attorney who allegedly obtained his
criminal history and provided no documentation in support of his
claim.  Further, under the AEDPA, the PCR court's factual findings
regarding petitioner's lack of credibility are entitled to this
court's deference absent "clear and convincing evidence" to the
contrary.   28 U.S.C. § 2254(e)(1).  Given the lack of basic
information and corroborating evidence, counsel was not deficient
in failing to obtain the testimony of this witness.

Moreover, petitioner cannot establish prejudice.  Petitioner
"must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would
have been different. A reasonable probability is a probability
sufficient to undermine confidence in the outcome." Williams, 529
U.S. at 390-91 (quoting Strickland, 466 U.S. at 687, 688, 694).  If
petitioner's claim had factual basis and counsel had called this
attorney as a witness, the jury would have learned about
petitioner's criminal history involving sexual abuse - evidence

that would not have assisted in his defense.   Therefore, the PCR court's decision was not an unreasonable application of <u>Strickland</u>.

<u>CONCLUSION</u>

For the reasons set forth above, petitioner's First Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (doc. 19) is DENIED, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this __1__ day of May, 2008.


_____/s/ Ann Aiken_____
                    Ann Aiken
            United States District Judge

20 - OPINION AND ORDER